```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

CRAIG LYNCH,

          Petitioner,         **No. 10-CV-0589(MAT)**
  -vs-                                   **DECISION AND ORDER**

HAROLD GRAHAM,

          Respondent.

## I. Introduction

Pro se petitioner Craig Lynch ("Lynch" or "Petitioner") has filed a petition for a writ of habeas corpus challenging the constitutionality of his conviction, following a jury trial, on charges of second degree (felony) murder, first degree manslaughter, and second degree burglary. He was sentenced as a second felony offender to an aggregate term of 25 years to life in prison, and he is presently serving that sentence.

## II. Factual Background and Procedural History

Lynch's conviction arises from the murder of Sister Klimczak in Buffalo, New York, in April 2006. Lynch, who was on parole at the time, had been staying at Bisonette House, a halfway house for parolees. Beth Ann Hart-Bader ("Hart-Bader"), Lynch's parole officer, first learned of Sister Klimczak's disappearance on the morning of Monday, April 17, 2006. Hart-Bader went to Bisonette House to check on Lynch, where she learned that all of the parolees were at the parole office.

Later that morning, Hart-Bader spoke to Lynch about his whereabouts on April 14th and 15th. Lynch replied that on April 14th

he had gone to visit his mother, who had given him money to get her car (a white van) repaired. Instead, Petitioner used the money to buy crack. He explained that he drove around and smoked crack and marijuana. When his parole officer inquired about April 15th, Lynch became extremely agitated and refused to say anything else because "she was just going to lock him up anyway." The parole officer ceased questioning Lynch, told him to provide a urine sample, and then placed him in a holding area in the parole office. Petitioner's urine test came back positive for illegal drugs.

In the meantime, the homicide investigation had uncovered some evidence possibly linking Petitioner to Sister Klimczak. Significantly, the police had been able to trace phone calls from Sister Klimczak's cell phone, which had been sold on the street by a man driving a white van–and Lynch had told his parole officer that he had been using a white van over the weekend.

A warrant eventually was issued for Lynch's arrest, and he was brought to the police department where he gave a statement incriminating himself in Sister Klimczak's death. When Petitioner broke into Sister Klimczak's room, the victim saw him and in an attempt to make her "go unconscious", he put his hands over her mouth and nose. Instead of "going unconscious", she died.

Petitioner then sought to dispose of the body. After removing the victim's outer clothing (leaving her in her bra and panties, Lynch brought the corpse to his grandmother's abandoned house, where he dug a deep, narrow hole in the garage and placed the

corpse in it feet-first. After giving his statement, Lynch led the police to the place where he had buried the victim's body.

Lynch was charged with two counts of murder in the first degree (N.Y. PENAL LAW ("P.L.") § 125.27(1),(a),(vii)), three counts of murder in the second degree (P.L. § 125.25(1), (2), (3)), burglary in the second degree (P.L. § 140.25(2)) and robbery in the third degree (P.L. § 160.05). Following a jury trial, he was convicted of second degree (felony) murder and second degree burglary, as charged in the indictment, as well as the lesser included offense of first degree manslaughter in the first degree. He was acquitted of the remaining charges.

Lynch was sentenced as a second felony offender to an indeterminate term of twenty-five years to life on the murder conviction, a determinate term of twenty-five years and five years post-release supervision on the manslaughter conviction and a determinate term of fifteen years and five years post-release supervision on the burglary conviction. The sentences were ordered to be served concurrently, but consecutive to any sentence imposed for his violation of parole due to his drug use.

Petitioner's conviction unanimously was affirmed by Appellate Division, Fourth Department ("the Fourth Department"), of New York State Supreme Court, and leave to appeal to the New York Court of Appeals was denied. This timely habeas petition followed.

For the reasons that follow, the petition is dismissed.

**III. Analysis of the Petition**

    **A.   Illegal Detention and Questioning by the Division of Parole**

Petitioner contends as he did on direct appeal that he was illegally detained and questioned by the Division of Parole without probable cause and at the behest of the Buffalo Police Department. Accordingly, Petitioner argues, the trial court erred in refusing to suppress both his statements to the police and physical evidence recovered by the police after those statements were made. The Fourth Department held that based on the record of the suppression hearing, it could not find that the trial court erred in concluding as a matter of law that the questioning and detention of Lynch by parole officers was in furtherance of parole purposes and related to their duties as parole officers. People v. Lynch, 60 A.D.3d 1479, 1480 (App. Div. 4th Dept. 2009) (citing People v. Huntley, 43 N.Y.2d 175, 181 (N.Y. 1977)).

In Huntley, the New York Court of Appeals explained that "whether [a parole search] was unreasonable and thus prohibited by constitutional proscription must turn on whether the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty." 43 N.Y.2d at 181. The Second Circuit has held that these principles are not inconsistent with the Fourth Amendment's proscription against unreasonable searches and seizures, and indeed are "coextensive with the requirements of the Fourth Amendment." United States v. Grimes, 225

F.3d 254, 259 & n.3 (2d Cir. 2000). "A rule indicating that a search of a parolee is permissible so long as it is reasonably related to the parole officer's duties is identical to a rule that parole officers may conduct searches so long as they comport with the Fourth Amendment." Id. (citing Chandler v. Miller, 520 U.S. 305, 313-14 (1997) (noting that the doctrine of "special needs" permits those searches that are reasonably related to the special needs animated by management of a parole system)).

Thus, Lynch is effectively claiming that his Fourth Amendment rights were violated by the parole officer's conduct. However, under Stone v. Powell, 428 U.S. 465 (1976), a federal habeas court is barred from reviewing the merits of a Fourth Amendment claim so long as the state has provided the petitioner with the opportunity for a full and fair litigation of his claim. The Second Circuit has explained that review of such claims in habeas petitions may be undertaken "in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

Here, Lynch was afforded a full and fair opportunity to litigate his Fourth Amendment claim in the state courts. A hearing was held on his motion to suppress his statements to police, after

which the motion was denied. Petitioner raised the claim anew in his direct appeal, where it was again denied. Accordingly, further review of the claim in federal court is precluded.

### B.   Violation of N.Y. Exec. Law § 259-i(3)(a)(i)

Petitioner contends that he was placed in custody at the parole office before a parole warrant was issued, in violation of N.Y. Exec. Law § 259-i(3)(a)(i), which provides that a parole officer who has reasonable cause to believe that a parolee has violated a condition of parole must report that fact to a member of the New York State Parole Board or an officer of the New York State Division of Parole designated by the Board, who may then issue a warrant for the retaking and temporary detention of the parolee.

The Appellate Division held that although Lynch's detention at the parole office was in violation of N.Y. Exec. Law § 259-i (3)(a)(i), application of the exclusionary rule was not warranted because this technical violation did not infringe upon Lynch's constitutional right to be free from unreasonable searches and seizures. People v. Lynch, 60 A.D.3d at 1480 (citations omitted).

This claim presents only an error of state statutory law, and does not raise a question of federal constitutional magnitude. As such, it is not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a).

### C.   Prosecutorial Misconduct

Lynch argues that he was deprived of his right to a fair trial by prosecutorial misconduct. On direct appeal, the Fourth

Department rejected the claim partially on the merits and partially as unpreserved:

> The prosecutor's description of the defense theory as "outrageous" was within the wide rhetorical bounds afforded the prosecutor. In addition, defendant was not denied a fair trial when the prosecutor made an isolated comment that in effect insulted and denigrated defense counsel by referring to the belief of defense counsel that he could convince the jury that the victim was unintentionally killed. The record does not support defendant's contention that the prosecutor acted as an unsworn witness, and defendant failed to preserve for our review his further contention that the prosecutor improperly shifted the burden of proof to defendant. We decline to exercise our power to review that contention as a matter of discretion in the interest of justice.

People v. Lynch, 60 A.D.3d at 1480-81 (citations omitted). Even under a de novo standard of review, habeas relief is not warranted.

Lynch's contention that the prosecutor's remarks violated the Constitution can only succeed if he can demonstrate that they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). Thus, to be entitled to relief, Lynch "must show 'that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.'". Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998) (quoting Bentley v. Scully, 41 F.3d 818, 823 (2d Cir. 1994) (internal quotation marks and citation omitted in Tankleff)).

In deciding whether a petitioner has suffered actual prejudice as a result of the prosecutorial misconduct, the Second Circuit

considers "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981) (per curiam). Here, although it was improper for the prosecutor to denigrate the defense, the other instances of alleged misconduct were not supported by the record or did not exceed the bounds of fair comment. See United States v. Suarez, 588 F.2d 352, 354 (2d Cir. 1978) ("Both prosecution and defense are entitled to broad latitude in the inferences they may suggest to the jury during closing arguments.") (citation omitted). Furthermore, there was extremely strong evidence of guilt, making it is highly improbable that the jury would not have convicted the defendant absent the prosecutor's comments. See United States v. Saa, 859 F.2d 1067, 1077 (2d Cir. 1988) ("[B]ased on the other evidence against [the defendants], we find . . . that any adverse inference improperly drawn by the jury would not have tilted the scales from not guilty to guilty.")). Thus, Lynch cannot demonstrate the "substantial prejudice" required to succeed on a claimed due process violation resulting from prosecutorial misconduct. Tankleff, 135 F.3d at 252.

**D.   Erroneous Introduction of Photographs of the Victim**

Petitioner contends as he did on appeal that the trial court erred in admitting photographs of the victim and the crime scene into evidence which he argues were "disturbing and graphic" and irrelevant to the issues at trial.

It is well-settled that claims based solely on state law grounds are generally not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. at 67 (citation omitted). Moreover, "erroneous evidentiary rulings do not automatically rise to the level of constitutional error." Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988). However, the Due Process Clause of the Fourteenth Amendment prohibits the introduction of evidence that "is so extremely unfair that its admission violates fundamental conceptions of justice." Dowling v. United States, 493 U.S. 342, 352 (1990) (internal citation and quotation marks omitted). "Erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue only where petitioner can show that the error deprived her of a fundamentally fair trial." Taylor v. Curry, 708 F.2d 886, 891 (2d Cir.1983) (emphasis in original) (citations omitted).

In Lynch's case, the Fourth Department correctly held, as a matter of state evidentiary law, that the photographs of the victim's body were admissible. People v. Lynch, 60 A.D.3d at 1481. Under New York law, photographs should be excluded only if their sole purpose is to arouse the emotions of the jury and to prejudice the defendant.

The theory of the prosecution was that Lynch intentionally strangled Sister Klimczak to prevent her from identifying him as the person in her room. Although Lynch admitted to killing her, he

maintained that he did not intend to do so but instead accidentally caused her death while attempting to render her unconscious by placing his hand over her nose and mouth. The photographs at issue showed the nature of the injuries to the victim's face and tended to prove that Lynch acted with intent to kill, an essential element of the murder counts. As the Fourth Department concluded, the photographs were relevant and probative of intent, and thus it cannot be said that they were admitted for the sole purpose of inflaming the jury. Lynch has not shown an error of state law occurred in connection with the photographs' admission into evidence, much less an error of constitutional magnitude.

### E.   Erroneous Preclusion of Testimony Regarding Intent

Lynch contends that the trial court denied him of his Sixth Amendment right to present a defense by refusing to allow him to present the testimony of the Buffalo Police Commissioner giving his opinion that Sister Klimczak's death was accidental and committed while Lynch was under the influence of crack cocaine. Lynch argues that such evidence was admissible because it constituted a timely response to his confession and inculpatory statements. In support of this proposition, Lynch relies on the evidentiary principle that when part of an admission or confession has been received into evidence, the party against whom it is offered has the right to "prove any other statement made by him at the same time which tends to modify or destroy the effect of the admission." Richardson,

Evidence, § 8-210 (Prince 11th ed.); see also People v. Dlugash, 41 N.Y.2d 725, 736 (N.Y. 1977).

"A court's discretion in evidentiary rulings is circumscribed by the rules of evidence and the defendant's constitutional right to present a defense [.]" People v. Carroll, 95 N.Y.2d 375, 385 (N.Y. 2000) (citing, inter alia, Chambers v. Mississippi, 410 U.S. 284, 294 (1973) ("The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations.")). "Evidence is relevant if it has any 'tendency in reason to prove any material fact[.]'" Id. (quoting Richardson, Evidence § 4, at 2 (Prince 10th ed.) (quotation omitted)). More specifically, "[r]elevant evidence means 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence[.]'" People v. Davis, 43 N.Y.2d 17, 27 (N.Y. 1977) (quoting Uniform Rules of Evidence, rule 401 (1974)). In other words, relevant evidence "tends to convince that the fact sought to be established is so[.]" Id. (citation omitted).

The proposed testimony of the police commissioner was relevant, and "[a]ll relevant evidence is admissible unless its admission violates some exclusionary rule[.]" People v. Lewis, 69 N.Y.2d 321, 324 (N.Y.1987) (citation omitted)). However, the evidence violated New York's exclusionary rule prohibiting witnesses from stating a conclusion as to the intent, motive, or

belief of another individual. E.g., Bogart v. City of N.Y., 200 N.Y. 384-85 (N.Y. 1911) ("When a person declares the intention or expectation of another apart from the acts or statements from which the conclusion is derived, it is manifest that his declaration is a mere conjecture or a conclusion derived from other facts. The conjecture or conclusion of a witness is generally improper and incompetent, and should not be allowed as testimony in a case. The facts and circumstances should be given from which the intention or expectation of the person under consideration can be determined as a fact."); accord, e.g., People v. Russell, 165 A.D.2d 327, 332 (App. Div. 2d Dept. 1991) ("As a general principle of common-law evidence, lay witnesses must testify only to the facts and not to their opinions and conclusions drawn from the facts. It is left to the jury to draw the appropriate inferences arising from the facts[.]") (citations omitted).

The police commissioner's proposed opinion testimony that Lynch did not intend to kill the victim would have usurped the jury's fact-finding function as to an ultimate issue of the case-Petitioner's intent. See, e.g., People v. Simmons, 66 A.D.3d 292, 307 (App. Div. 1st Dept. 2009) ("It is a cornerstone of our legal system that the roles of the court and the jury are separate and distinct, particularly regarding the issue of intent: '[T]he question of intent can never be ruled as a question of law, but must always be submitted to the jury. . . .") (quoting People v. Flack, 80 Sickels 324, 334, 26 N.E. 267 (N.Y. 1891)); People v.

Wright, 282 A.D.2d 712, 714 (App. Div. 3d Dept. 2001) ("The officers should not have been permitted to offer testimony directed at the ultimate question of whether defendant possessed the requisite intent to sell on this occasion, a question which should have been left to the jury[.]") (citations omitted).

When a trial court has not made a state evidentiary error, the habeas court must consider whether the evidentiary rule the court applied is arbitrary or disproportionate to the purposes it is designed to serve. Hawkins v. Costello, 460 F.3d 238, 244 (2d Cir. 2006) (citing United States v. Scheffer, 523 U.S. 303, 308 (1998)). A state evidentiary rule is "unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." Scheffer, 523 U.S. at 308. The Supreme Court has "never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted." Crane v. Kentucky, 476 U.S. 683, 690 (1986). Although Lynch's Sixth Amendment right to present a defense is certainly a weighty interest, the right to a trial by jury is also critical. The evidentiary rule at issue here furthers the trial-by-jury right by preserving the jury's role as the arbiters of ultimate issues of fact. Thus, the Court cannot find that the evidentiary rule which the state court applied to exclude the police commissioner's opinion testimony was arbitrary or disproportionate, either in fact or in application.

**F.     Erroneous Preclusion of DNA Evidence**

Lynch contends that the trial court abused its discretion when denied his motion to preclude the prosecution's DNA evidence, to which he objected based on a lack of timely notice. The Fourth Department held that the trial court had properly exercised its discretion in allowing the evidence.

Section 240.20(1)(c) of New York Criminal Procedure Law ("C.P.L.") requires that the prosecution upon demand, produce "[a]ny written report or document, or portion thereof, concerning a scientific test or experiment, relating to the criminal action or proceeding which was made by, or at the request or direction of a public servant engaged in law enforcement activity." N.Y. CRIM. PROC. LAW § 240.20. C.P.L. § 240.70 provides that if a party fails to comply with the discovery mandates, the court "may order such party to permit discovery of the property not previously disclosed, grant a continuance, issue a protective order, prohibit the introduction of certain evidence or the calling of certain witnesses or take any other appropriate action." N.Y. CRIM. PROC. LAW § 240.70(1).

In determining an appropriate remedy for the prosecution's failure to disclose evidence, the court may consider the degree of prosecutorial fault "but the overriding concern must be to eliminate any prejudice to the petitioner while protecting the interests of society." People v. Kelly, 62 N.Y.2d 516, 520 (N.Y. 1984).

Lynch's claim raises an issue of whether the state court properly applied a statutory rule of discovery, not an issue of federal constitutional law. As such, it is not cognizable on habeas review. See Estelle, 502 U.S. at 67-68. In any event, Lynch has not established that trial court abused its discretion in not ordering preclusion, since the chronology supports a finding that the prosecutor timely complied with his discovery obligations. Petitioner filed an omnibus motion seeking discovery of scientific testing and reports on June 16, 2006. In a responding affidavit dated July 13, 2006, the prosecution turned over the autopsy and toxicology reports and advised counsel that the Erie County Central Police Services Laboratory had been asked to examine certain items of evidence, and that depending on the results of the testing, the prosecution might request a buccal swab from Lynch for DNA testing. On November 6, 2006, the prosecutor advised the court and counsel that he had just received an oral report from the lab indicating the presence of genetic material under the victim's fingernails. The prosecutor's request for Lynch to provide a DNA sample was granted by the court. Two days later, the written report noting the presence of genetic material under the victim's fingernails was provided to defense counsel.

Thus, at the time of oral argument of the motion on November 30, 2006, defense counsel had already been apprised of the results for 9 days. The trial was not scheduled to begin until December 4th, and the prosecutor informed the court that he did not

intend to put on DNA proof until the second week of trial. This gave defense counsel 19 days to review the materials and determine the appropriate strategy for addressing the DNA results.

### G. Ineffective Assistance of Appellate Counsel

Lynch contends that appellate counsel was ineffective for failing to raise the issue of trial counsel's alleged failure to request a Dunaway hearing[1] in his omnibus motion. As Respondent points out, this claim is unexhausted, it having never been raised in state court. However, this Court has the authority to dismiss habeas petitions containing unexhausted claims on the merits, 28 U.S.C. § 2254(b)(2). The Court determines that this is proper course to follow, since the claim is patently without merit.

The two-pronged standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), for evaluating trial counsel's performance applies equally to attacks on appellate counsel's representation. Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992), cert. denied, 508 U.S. 912 (1993). Here, the record plainly refutes the factual underpinnings of Petitioner's claim.

Contrary to Lynch's contention, trial counsel filed an omnibus motion seeking to suppress petitioner's statements and evidence seized and challenging the probable cause for his arrest. The trial court's suppression decision dated December 4, 2006, also addressed

---

[1] The purpose of a pretrial hearing pursuant to Dunaway v. New York, 442 U.S. 200 (1979), is to determine whether probable cause existed for a criminal defendant's arrest. The Supreme Court recognized in Dunaway that statements given by a suspect who is arrested without probable cause must be suppressed pursuant to the Fourth Amendment's "exclusionary rule." Id. at 216-18.

-16-

Petitioner's motion and cited <u>Dunaway</u>. Finally, the brief filed by appellate counsel noted that trial counsel challenged the legality of Petitioner's detention and arrest under <u>Dunaway</u>. Thus, Lynch cannot establish the "deficient performance" prong of <u>Strickland</u>.

Furthermore, Lynch cannot establish that he was prejudiced, because any <u>Dunaway</u> claim was meritless. Probable cause clearly existed for Petitioner's arrest based on his admission that he used cocaine and marijuana in violation of the conditions of his parole, and the positive toxicology results from his urine test.

## IV. Conclusion

For the foregoing reasons, Craig Lynch's request for a writ of habeas corpus is denied and the petition (Docket No. 1) is dismissed. Petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R.App.P. 24(a)(3), that any appeal from this Decision and Order would not be taken in good faith and therefore the Court denies leave to appeal as a poor person from this Decision and Order. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

DATED:   October 28, 2011
         Rochester, New York